**Max MONROE, Plaintiff–Appellant,**

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, a corporation, Defendant–Appellee.**

No. 90–6240.

United States Court of Appeals, Tenth Circuit.

Jan. 14, 1992.

Glen Mullins, Oklahoma City, Okl., for plaintiff-appellant.

Mary E. Mott (George D. Davis, with her on the brief) of McKinney, Stringer & Webster, P.C., Oklahoma City, Okl., for defendant-appellee.

Before EBEL and McWILLIAMS, Circuit Judges, and JENKINS, Chief District Judge.*

McWILLIAMS, Circuit Judge.

This is a diversity action wherein an insured brought suit against his insurer on certain health insurance policies. Max Monroe, a citizen and resident of Oklahoma, had three such policies with Mutual of Omaha Insurance Company, a Nebraska corporation. Two of these policies contained the following language stamped in red ink on the front page of each policy: "Notice! Your Policy Carries An Elimination Endorsement." The third policy, apparently through inadvertence, carried no such endorsement and is not an issue in this case. The two policies which contained the notice carried an elimination endorsement which excluded medical and hospital expenses resulting from disease or disorder of the heart or coronary artery.[1] A bit of background is in order.

Max Monroe was a part-owner and employee of a family oil drilling business, the Rebel Drilling Company, from 1978 until sometime in 1986. In 1983, Rebel Drilling Company obtained a group health insurance policy for its employees from United of Omaha, which company was later acquired by Mutual of Omaha. Max Monroe was a covered employee. The group policy provided that so long as Rebel Drilling paid its premiums and met the eligibility requirements, Mutual of Omaha could not terminate or cancel the policy. In February, 1984, Max Monroe, then age 32, suffered a heart attack and in connection therewith incurred certain medical and hospital expenses for which he received benefits from Mutual of Omaha under the group policy.

In April, 1986, Max Monroe stopped working for Rebel Drilling and in 1987 opened a pawn shop.[2] In November, 1987, Monroe began discussions with Jack Mills, a local agent for Mutual of Omaha, relating to the possible purchase, by Monroe, of individual health insurance policies from Mutual of Omaha. These discussions, about which more will be said later, culminated on December 2, 1987, when Monroe made written application to Mutual of Omaha for individual health insurance. Mutual of Omaha issued Monroe the three individual health insurance policies referred to above on December 15, 1987. Each policy required a monthly payment of the premiums due, with the first renewal date being January 15, 1988.

On January 11, 1989, when the three policies were in force and effect, Monroe suffered another heart attack, for which he was hospitalized for nine days. Monroe made claim against Mutual of Omaha to pay his hospital and medical expense incurred in connection with his heart attack suffered on January 11, 1989, and Mutual

---

* Honorable Bruce S. Jenkins, Chief Judge for the District of Utah, sitting by designation.

1. These two policies were stamped on the front page in red ink with the following notation: "Notice! Your Policy Carries an Elimination Endorsement." On page 9 of both policies the Elimination Endorsement was stamped at the bottom of the page, again in red ink, and it provided that benefits would not accrue for loss sustained by the insured resulting from the conditions set forth in the policy certificate schedule. The policy certificate schedule identified the following condition as not being covered: "DISEASE OR DISORDER OF THE HEART AND CORONARY ARTERY–MAX."

2. Mutual of Omaha contends that when Monroe quit working for Rebel Drilling Company in April, 1986, he was no longer covered by the group policy, which, by its terms covered only full-time employees, i.e., those who worked at least 30 hours per week, and that the policy itself terminated in the fall of 1987 when Rebel Drilling Company ceased doing business and discontinued making premium payments.

eventually made payment on the policy which contained no elimination endorsement, which payment, however, did not cover the total expense incurred. Mutual of Omaha then refused to make payment of $3,021.50 under the two other health insurance policies which contained elimination endorsements, contending that under those policies, treatment of a heart condition was an excluded risk. This suit followed.

The gravamen of Monroe's complaint is that Mutual of Omaha "represented" to him that the two health insurance policies issued him with which we are here concerned, "would include coverage for treatment relating to plaintiff's heart." We find no breach of contract claim set forth in the complaint, and the only reference to any breach of duty on the part of Mutual of Omaha to deal fairly and in good faith with Monroe concerns Mutual of Omaha's refusal to pay benefits allegedly due Monroe under the two policies. By way of damages, Monroe stated that he had suffered damages in an amount in excess of $10,000, which presumably means that his hospital and medical expenses were in excess of $10,000. Monroe also sought $500,-000 for his embarrassment, mental and emotional distress, and his then present inability to obtain new health insurance coverage for his heart condition. Further, Monroe alleged that Mutual of Omaha was guilty of such gross misconduct that he was entitled to punitive damages in the amount of $500,000.

Shortly prior to trial, Monroe filed with the District Court his so called "Final Contentions," wherein Monroe again stated that he had informed Mutual of Omaha's agent that he desired "full coverage," including "coverage for treatment relating to plaintiff's heart," that the policies issued him by Mutual of Omaha excluded benefits for treatment of his heart, and that Mutual of Omaha's agent committed fraud and made false representations when he told Monroe that the policies provided coverage for his heart condition. Paralleling the allegations of his complaint, Monroe in his "Final Contentions" again stated that Mutual of Omaha, acting through its local agent, breached its duty to deal fairly and in good faith with him by failing to pay him the benefits due him under the policies. Monroe also made claim in his "Final Contentions" that Mutual of Omaha had refused to reform the policies to conform to the representations made by its agent.

In any event, it is agreed that at trial Monroe asserted three claims against Mutual of Omaha: (1) breach of contract; (2) breach of duty to deal fairly and in good faith; and (3) fraud and deceit. However, the district court refused to instruct the jury on Monroe's claims based on breach of contract and breach of duty to act fairly and in good faith, apparently believing that the evidence did not warrant such. The district court did submit Monroe's claim based on fraud and deceit to the jury and in connection with that claim the jury found for Monroe and fixed his damages at $5,500. It is Monroe who appeals that judgment, not Mutual of Omaha.

■ Monroe initially argues that the district court erred in refusing to instruct the jury on his breach of contract claim and his claim based on breach of the duty to act fairly and in good faith. Mutual of Omaha's initial response to that argument is that the question is now purely academic, because Monroe's third claim based on fraud and deceit was submitted to the jury, and the jury found in his favor and awarded him $5,500.00. In other words, Mutual of Omaha argues that the facts underlying all three claims are the same. However, according to Mutual of Omaha, even if all three claims had been submitted to the jury, and even assuming that he prevailed on all three claims, Monroe could have only been entitled to "one recovery," which the jury has now awarded him on his third claim. We agree with Mutual of Omaha. Accordingly, we need not here concern ourselves with possible error on the part of the district court in refusing to instruct the jury on Monroe's claims based on breach of contract and breach of duty to act fairly and in good faith. Indeed, all of Monroe's contentions in this court which bear on the issue of liability on the part of Mutual of Omaha are rendered moot by the fact that

the jury found in his favor on his third claim based on fraud and deceit.

Monroe's argument that the district court erred in instructing the jury that he has the burden of proving fraud and deceit by "clear and convincing" evidence, rather that by a mere preponderance of evidence, is also now academic, because the jury by its verdict has found that Monroe met this higher burden of proof. The jury was further instructed that if they found that Monroe was entitled to a verdict against Mutual of Omaha for the tort of deceit, then they "must" award Monroe damages "in an amount that will reasonably compensate ... [him] for all the damages which are the natural and probable consequences of the defendant's acts...." We think the jury was adequately instructed on these matters.

Counsel has not indicated where the measure of damages for Monroe's claims based on breach of contract and breach of duty to act fairly and in good faith would differ from, and be greater than, the measure of damages on his deceit claim. In this latter connection, the jury was instructed that if they found for Monroe on the issue of tort liability he should be awarded damages for all "economic loss" caused by Mutual of Omaha's false representations that the two policies covered his heart condition, and that they could in addition thereto award Monroe damages for his emotional distress and mental anxiety caused by such false representations. The district court did instruct the jury that Monroe's "economic loss" could not extend beyond the term date of his present policies, and we perceive no error in such instruction. Mutual of Omaha did not agree to give health insurance coverage to Monroe for his entire lifetime and reserved the right to terminate the policies on any premium anniversary date. The uncontroverted evidence was that after Monroe's second heart attack on January 11, 1989, Mutual of Omaha would have terminated its policies issued Monroe on the next premium anniversary date.

As indicated, any possible error by the district court in refusing to instruct the jury on Monroe's claims based on breach of contract and breach of duty to deal fairly would, under the circumstances, be only harmless error. This determination disposes of most of Monroe's argument in this court. All of Monroe's arguments in this court pertaining to the question of Mutual of Omaha's liability to Monroe are academic because the jury found that Mutual of Omaha was in fact liable to Monroe on his fraud claim.

There does remain the question of whether the district court erred in refusing to instruct the jury on punitive damages in connection with Monroe's fraud and deceit claim. In so doing, the district court commented that in as much as Monroe did not even read the policies here in question, he was not entitled to punitive damages. In this regard, counsel in this court agree that punitive damages depend more on a defendant's conduct than a plaintiff's conduct.

Counsel for Mutual of Omaha asserts that even though Monroe prevailed on his fraud and deceit claim, such does not mean that he necessarily was entitled to punitive damages, or that he was even entitled to have his claim for punitive damages submitted to the jury. Counsel states that under Oklahoma law punitive damages are highly penal in nature and can not be awarded unless there are highly aggravating circumstances, citing *Lenn v. Miller*, 403 P.2d 458 (Okla.1965) and *Galt–Brown Co. v. Lay*, 183 Okl. 87, 80 P.2d 567 (1938). Counsel suggests that Monroe's evidence in support of his claim for punitive damages does not meet this high standard. We agree.

Although in the complaint and again in the "Final Contentions," counsel alleged that Mutual of Omaha's agent verbally informed Monroe that the policies here in question would cover his heart condition. Monroe's testimony at trial did not support such allegations. Monroe testified that at no time did Mutual of Omaha's agent explicitly tell him that his heart condition was a covered risk. He admitted that he had conversations with the agent concerning maternity benefits, and his heart condition and testified that while the agent stated that the policies included maternity bene-

fits, the agent never stated one way or the other whether Monroe's heart condition would be covered, or excluded. Monroe admitted that he checked with other insurance companies to see if they could issue a health insurance policy that would include coverage for his heart condition and found that because of his coronary history they would "rider out" heart coverage. It was in this general setting that Monroe bought the two policies here involved.

With Monroe having candidly admitted that Mutual of Omaha's agent never did tell him that the policies covered his heart condition, and with the agent having testified that he did *not* tell Monroe that his heart condition was covered, having in fact told him that such was not covered, punitive damages were not in order. The false representation by Mutual of Omaha's agent that treatment of Monroe's heart was a covered risk, when it was not, was at the very heart of Monroe's fraud and deceit claim. At trial Monroe admitted on cross-examination that the agent never did tell him his heart would be covered. Such being the case, the district court did not err in refusing to instruct the jury on punitive damages.

■ We reject the suggestion that the district judge by his demeanor and statements somehow indicated to the jury that he "favored" Mutual of Omaha. No objection to the district judge's conduct was raised during trial, and the record on appeal does not support this suggestion. And, of course, the fact that the jury found in favor of Monroe tends to take the air out of any suggestion of judicial misconduct.

Judgment Affirmed.